## FIRESIDE MARSHMALLOW CO.
### v.
## FRANK QUINLAN CONST. CO.
### No. 14990.

United States Court of Appeals,
Eighth Circuit.

June 2, 1954.

Rehearing Denied July 2, 1954.

Arthur N. Nystrom, Kansas City, Mo. (Charles B. Blackmar and Blackmar, Newkirk, Eager, Swanson & Midgley, Kansas City, Mo., on the brief), for appellant.

Harry A. Hall, Kansas City, Mo., for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This is an appeal from a judgment dismissing appellant's complaint in an action brought by it to recover damages for the alleged breach of a contract for the laying of a Mastical truck floor. In this opinion we shall refer to the parties as they appeared in the trial court. Plaintiff had a contract with defendant for the laying of this floor in its marshmallow manufacturing plant and it was alleged that the floor as laid was not in accordance with the contract specifications and had to be removed, resulting in a four day shutdown for which it claim-

9. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456.

ed $5,000 damages. The answer denied that the floor as laid was not in accordance with the contract specifications and pleaded a counterclaim for the full amount alleged to be due on performance of the contract.

The action was tried to the court without a jury and the court found all the issues raised by defendant's answer to plaintiff's complaint in favor of the defendant and on the issues raised by defendant's counterclaim found that it was entitled to recover not the full amount specified in the contract but on quantum meruit in the sum of $348.

The court specifically found among other things that defendant had laid the floor in plaintiff's plant in accordance with the specifications contained in the contract but that it had been laid in an enclosed room where there was insufficient ventilation to permit the flooring to harden and dry within a normal period of time and that in these circumstances defendant requested plaintiff to permit the windows of the plant to be opened but that the plaintiff failed and refused to permit the opening of these windows. The court then found that if the windows in said room had been opened on Monday, July 3rd, the room in which the floor was laid would have dried out and the Mastical floor would have dried and set within a reasonable time thereafter, with the result of providing a Mastical floor within the ambit of the contract in suit. The court also found that plaintiff's delay in getting back into production on and after July 5th was directly and proximately caused by hindrance on the part of plaintiff, acting through its duly authorized representatives, in refusing to permit the windows in the conditioning room, which were walled up, to be opened. The court found that the work in laying the floor was done and performed in accordance with the provisions of the contract and that it would have dried and set within a reasonable time had it had proper ventilation which would have resulted had the plaintiff permitted the windows in the plant to be opened as requested by defendant's representative and that the only reason the floor did not dry and set within twenty-four to thirty-six hours after it was laid was because of the atmospheric conditions maintained in the room in which it was laid.

As to plaintiff's alleged loss of profits during the four day shutdown caused by the delay in completing the laying of the floor the court found:

"There is no evidence in this record that plaintiff was actually prevented from fulfilling any orders it may have had on hand for its products as a consequence of the occurence in question. The testimony of Mr. Shafton is that, 'All I can tell the Court was that we had enough ' sales to operate at the full 2-shift production in July, and to go into three shifts in August, so I don't know what I may or may not have lost.' His further expressed opinion that plaintiff's loss while its plant was shut down, was $1,000.00 a day, is not based on any probative facts in the instant record. Even if plaintiff was entitled to recover in this action, the Court could not find as a fact that plaintiff suffered other than nominal damages."

The court among other things concluded as a matter of law that the plaintiff by refusing to permit the windows in its plant to be opened so as to allow adequate ventilation had hindered and prevented the defendant in the performance of its contract and that this breach of the contract by the plaintiff was the proximate cause of the delay in its timely performance and of any damage suffered by it. On the question of damages the court concluded that the evidence was so conjectural and speculative that it did not form a legal basis for determining its amount, if any, and that the evidence was insufficient to prove that the plaintiff in fact lost any sales of its products. The contract did not specify any particular time within which the Mastical truck floor would harden or set.

Further reference will be made to the court's findings and to the evidence in connection with the contention of plaintiff that the findings are not supported by substantial evidence.

From the judgment entered on the court's findings of fact and conclusions of law, the plaintiff seeks reversal on substantially the following grounds:

1. The court erroneously found that plaintiff's failure to provide ventilation caused the failure of the Mastical floor to set.

2. The court erred in imposing additional conditions on plaintiff when defendant had prescribed in the contract the conditions under which the floor was to be laid.

3. The trial court's finding that plaintiff caused the delay in resuming production by its failure to open the windows in the conditioning room, and the trial court's finding that the failure of said floor to dry and set up within twenty-four to thirty-six hours was the result of atmospheric conditions maintained in the conditioning room are not supported by substantial evidence on the record as a whole and are clearly erroneous.

4. The trial court's finding that plaintiff was not prevented from filling any orders and that it had not shown a daily loss of one thousand dollars during the business interruption is not supported by substantial evidence on the record as a whole and is clearly erroneous.

5. The trial court erroneously stated the law as to the quantum of proof required to support an award for damages for loss of profits.

This is the second appeal of this case. The decision on the first appeal is reported in 8 Cir., 199 F.2d 511.

Counsel for the respective parties have exhaustively briefed and ably argued the issues going to the contention that the court's finding that the proper fulfillment of the contract between the parties was prevented by the acts of the plaintiff which constituted a breach of the contract is not sustained by substantial evidence. The questions raised in connection with this phase of the case are serious ones and would deserve our very careful and exacting attention were it not for the finding of the court that in any event the evidence as to loss of profits was too vague, uncertain and speculative to warrant the finding of any damages. If the court was right on this phase of the case it would seem unnecessary to consider whether the four day shutdown suffered by plaintiff was occasioned by its own breach of the contract or that of the defendant. If in fact the evidence was insufficient to warrant the recovery of any damages then the other issues become academic and their consideration would serve no useful purpose. We shall therefore first consider the ultimate finding of fact and conclusion of law to the effect that the evidence as to plaintiff's alleged loss of profits was too indefinite, vague and speculative to warrant a finding of damages.

It is generally held that the expected profits of a commercial business are too remote, speculative and uncertain to permit a recovery of damages for their loss. To warrant such a recovery, in other words, the proof must pass the realm of conjecture, speculation or opinion not founded on facts, and must consist of actual facts from which a reasonably accurate conclusion regarding the cause and the amount of loss can be logically and rationally drawn. Winter v. Haan, Mo.App., 211 S.W.2d 544; Gildersleeve v. Overstolz, Mo., 90 Mo App. 518; Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96; Ellerson v Grove, 4 Cir., 44 F.2d 493; Keogh v. Chicago & Northwestern Railway Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183.

This court in Central Coal & Coke Co. v. Hartman, supra, speaking through Judge Walter H. Sanborn, in denying a claim for damages for loss of profits among other things said:

"Testimony of this character is nothing but conjecture, and it presents no substantial evidence to make certain the profits that were lost, if any. Expected profits are, in

their nature, contingent upon many changing circumstances, uncertain and remote at best. They can be recovered only when they are made reasonably certain by the proof of actual facts which present data for a rational estimate of their amount. The speculations and conjectures of witnesses who know no facts from which a reasonably accurate estimate can be made form no better basis for a judgment than the conjectures of the jury without facts."

In the instant case, as pointed out by the trial court in its findings, there was no evidence that the plaintiff was prevented from filling any orders for its products because of the four day shutdown and no evidence from which the court could determine that any loss had been suffered; in fact, the president of the plaintiff testified that:

"All I can tell the court was that we had enough sales to operate at the full 2-shift production in July, and to go into three shifts in August, so I don't know what I may or may not have lost."

His opinion that plaintiff lost $1,000.00 a day during the period of the shutdown was not based on any facts in the record and seems to be little more than a guess. The decision of this court in Central Coal & Coke Co. v. Hartman, supra, is referred to with approval by the Fourth Circuit Court of Appeals in Ellerson v. Grove, supra, where among other things the court says [44 F.2d 499]:

"The rule as to remote, speculative, and uncertain profits is laid down with unusual clearness in the case of Central Coal & Coke Co. v. Hartman, 8 Cir., 111 F. 96. Anticipated profits of a business are generally so dependent upon numerous and uncertain contingencies that their amount is not susceptible of proof with any reasonable degree of certainty, and hence the general rule is that the expected profits of a commercial business are too remote, speculative, and uncertain to war-

rant a judgment for their loss. Howard v. [Stillwell & Bierce] Manufacturing Co., 139 U.S. 199, 206, 11 S.Ct. 500, 35 L.Ed. 147; Cincinnati Siemens-Lungren Gas Illuminating Co. v. Western Siemens-Lungren Co., 152 U.S. 200, 205, 14 S.Ct. 523, 38 L.Ed. 411. It is true that the loss of profits from the destruction or interruption of an established business may be recovered where the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually was."

The rule with reference to the character of evidence that will sustain a finding of damage for loss of profits is succinctly stated in Gildersleeve v. Overstolz, supra, as follows:

"* * * if the evidence is so vague, as to leave it wholly conjectural or speculative, whether the plaintiff would have made a profit, or how much he would have made, if the defendant had not been derelict, loss of profits should not enter into the award."

It is not to be inferred that recovery for loss of profits may not in a proper case be had. But to warrant such a recovery profits must be capable of being measured or ascertained on a reasonable basis. "The sufficiency of the evidence of profits as an element of recoverable damages is dependent upon whether the data of which the evidence consists is such that a just and reasonable estimate can be drawn from it, * * *." Twentieth Century-Fox Film Corp. v. Brookside Theatre Corp., 8 Cir., 194 F.2d 846, 855.

We have carefully reviewed the evidence and considered the applicable law, especially on the question of damages, and on the whole record we are of the view that the conclusion of the court on that issue is clearly warranted. This being true, plaintiff could not in any event recover in this action and the judgment appealed from is therefore affirmed.