For the foregoing reasons, the judgment of the district court affirming the judgment of the bankruptcy court is

AFFIRMED.

**FIDELITY & GUARANTY INSURANCE UNDERWRITERS, INC.,**
**Plaintiff–Appellee,**

v.

**The CITY OF KENNER, et al.,**
**Defendants–Appellants.**

No. 89–3141.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1990.

Clement P. Donelon, Metairie, La., for defendants-appellants.

James C. Murphy, Jr., Patricia A. McKay, Cornelius, Sartin & Murphy, New Orleans, La., for plaintiff-appellee.

Before WISDOM, JOHNSON, and HIGGINBOTHAM, Circuit Judges.

WISDOM, Circuit Judge:

The City of Kenner (the insured) appeals a declaratory judgment in favor of Fidelity and Guaranty Insurance Underwriters, Inc. (the insurer or F & GIU) and against the City of Kenner (the insured). The district court held that the insurer had no duty to defend a third party's suit against the insured: the provisions of the policy unambiguously exclude coverage. We affirm.

### I.

The City of Kenner maintained a "Special Multi–Peril Policy" of insurance with F

& GIU. This appeal concerns F & GIU's obligation under that policy to defend a suit against Kenner[1] instituted by four officers presently employed and one officer formerly employed by the Kenner Police Department.[2] Kenner invokes the portion of the policy providing that the insurer "will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (a) bodily injury, or (b) property damage to which this insurance applies, caused by an occurence, . . .".[3] Another provision of the policy specifically excludes coverage for "bodily injury to any employee of the insured arising out of and in the course of his employment by the insured . . .".[4]

The plaintiffs in the suit against Kenner are active members of PACK, the Patrolmen's Association City of Kenner, a police union. They allege that they were the victims of an anti-union policy in the police department established and enforced by the city's Chief of Police. The policy was manifested in the defendants' "selectively disciplining, investigating, observing, transferring, demoting and making unreasonable demands" on the plaintiffs, and in the discharge of one plaintiff from employment. In their complaint, the plaintiffs assert several theories of liability, including deprivation of civil rights, violation of federal wiretapping laws, and state law invasion of privacy. After a second jury trial, the court entered judgment in favor of the defendants.[5]

The City of Kenner filed a third party complaint against F & GIU for defense and possible indemnification of the police officers' claims. In response, F & GIU filed suit in district court for a judgment declaring that the policy provided no coverage for the officers' claims against the city and that it was under no duty to defend Kenner in that suit.[6] F & GIU moved for summary judgment in the declaratory judgment suit. The district court granted its motion, ruling that the policy did not apply and that F & GIU was under no duty to defend Kenner in the officers' suit, citing three grounds upon which its decision was based: there was no allegation of bodily injury; the city's alleged anti-union conduct was not an occurrence because it was intentional; and the alleged injuries arose out of the complainants' employment.[7]

We affirm the district court's judgment on the ground that the officers' alleged injuries arose out of and in the course and scope of their employment with the city.[8] Since the policy specifically excludes coverage in this instance, F & GIU has no duty to defend the suit.

## II.

We review a district court's decision to grant summary judgment using the same

1. The officers' complaint also named as defendants the Kenner Police Department, Chief of Police Salvador Lentini, Acting Chief of Police Salvador J. Ciravola, and the following officers of the Kenner Police Department: Louis Turner, Steve Arroyo, Robert Hale, and "other unknown defendants". The plaintiffs named the "ABC Insurance Company" as the liability insurer of the defendants.

2. The plaintiffs are Mark Murret, Nick Congemi, Westley West, Sr., Thomas Powell, and Anita Allen.

3. The policy states that an " 'occurence' means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured . . .". Rec. 19.

4. Rec. 47.

5. An earlier jury trial before a magistrate was nullified when the trial court revoked the reference to the magistrate.

6. Rec. 218.

7. Rec. 360.

8. We do not decide whether the plaintiffs' claims of mental anguish and humiliation constitute an allegation of bodily injury. We note that appellate courts in Louisiana have taken opposing positions on this issue. *Compare Bloodworth v. Carroll*, 455 So.2d 1197 (La.App. 2d Cir.1984), *rev'd on other grounds*, 463 So.2d 1313 (La.1985) with *Albin v. State Farm Mutual Automobile Ins. Co.*, 498 So.2d 171 (La.App. 1 Cir.), *writ denied*, 498 So.2d 1088 (La.1986).

We also do not decide whether the police officers' suit against Kenner alleged facts that fit the definition of an "occurrence".

784

standards that the district court uses.[9] When questions of fact are raised, we examine the record independently and will not affirm the judgment unless we are certain that no genuine issue as to any material fact exists. We review questions of law "in the same manner as we decide questions of law outside the summary judgment context—by de novo review".[10]

■■■ An insurer's duty to defend a suit brought against its insured is broader than its duty to indemnify.[11] The determination of the existence of a duty to defend involves "a comparison of the allegations of the plaintiff's complaint and the terms of the policy".[12] The insurer must defend the insured, regardless of the outcome of the suit, if, "assuming all the allegations of the complaint to be true, there would be both (1) coverage under the policy and (2) liability to the plaintiff".[13] Nevertheless, if the allegations of the plaintiff's petition unambiguously exclude coverage, the insurer is not obligated to furnish a defense.[14]

■■■ Section Two of F & GIU's policy provides basic comprehensive general liability coverage to the City. It states that F & GIU will pay all sums the insured is legally obligated to pay as damages because of bodily injury or property damage that is caused by an occurrence. The policy also lists a number of exclusions. Exclusion "j" provides that "[t]his insurance does not apply ... to bodily injury to any employee of the insured ...".[15] Accordingly, if F & GIU can show from the face of the police officers' complaint that the alleged injuries arose out of and in the course of their employment with the City of Kenner, then it is under no obligation to defend Kenner in the suit.

The officers allege that because of their involvement with PACK, the defendants harassed and selectively disciplined them. Their detailed complaint alleges that the defendants consistently scheduled the plaintiffs on the most unfavorable shifts and work details, that the defendants wiretapped the plaintiffs' telephone calls and examined their mail, and that they demeaned the plaintiffs by placing them under the authority of lower-ranking policemen. Four of the five officers remained Kenner Police Department employees until the time of trial.[16]

Fidelity argues that exclusion "j" of the policy specifically denies coverage to Kenner for injuries to its own employees. Kenner responds that the exclusion does not apply, because although the alleged wrongful conduct was visited on the plaintiffs during their employment, "the mental anguish and humiliation which they alleged they experienced occurred outside their employment". This argument is without merit. It is plain that the plaintiffs alleged injuries as a result of their treatment at the hands of their employers in the scheduling and operation of their official duties as policemen. The employee exclusion does not require that the consequences of an injury be experienced under any particular circumstance. In sum, there is no genuine issue as to any material fact in this regard.

Kenner's second attempt to avoid the employee exclusion centers on Murret, the patrolman who was discharged. Kenner

9. *Brooks, Tarlton, Gilbert, Douglas & Kessler v. United States Fire Ins. Co.*, 832 F.2d 1358, 1364 (5th Cir.1987).

10. *Barrett Computer Serv., Inc. v. PDA, Inc.*, 884 F.2d 214, 216 (5th Cir.1989).

11. *Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir.1988).

12. *Id.* at 612. The question of the duty to defend is not answered by the actual outcome of the underlying suit for damages. *American Home Assurance Co. v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969); *Sullen v. Missouri Pacific R. Co.*, 750 F.2d 428 (5th Cir.1985).

13. *American Home Assurance Co.*, 230 So.2d at 259.

14. *Id.* at 259. *See also Jackson v. Lajaunie*, 270 So.2d 859, 864 (La.1972).

15. Rec. 47. That the plaintiffs allege intentional acts does not affect the operation of the employee exclusion. *Santiago v. Equipment Leasing of California*, 437 So.2d 971, 972 (La.App. 4th Cir.), *writ denied*, 441 So.2d 1223 (La.1983).

16. Plaintiff Mark Murret was discharged prior to trial, allegedly as a result of his union activities. See text at note 18.

argues that Murret continued to sustain damages in the weeks and months after his termination, so that those damages did not arise out of his employment. This argument is foreclosed by *Watson v. Town of Arcadia*,[17] a case that addressed the effect of an identical employee exclusion. The court squarely held that "[t]he alleged wrongful discharge and resulting injuries and damages to plaintiff are directly and indirectly related to the employment of plaintiff by the insured Town and arose out of and in the course of her employment by the Town".[18] Likewise, Murret's alleged injuries both on the job and from his discharge resulted from his employment. That he contends that his suffering continued after his termination is not determinative.[19]

## III.

The officers' allegations of wrongful conduct on the part of the City of Kenner and individuals in the Kenner Police Department clearly show that they sustained their injuries in the course of their employment with the department. Their complaint unambiguously excludes coverage for the city, because the policy does not apply to injuries sustained by employees of the insured arising out of their employment. Accordingly, F & GIU is under no obligation to defend the city in that suit. The judgment of the district court is AFFIRMED.

---

17. 542 So.2d 1168 (La.App. 2d Cir.1989).

18. *Id.* at 1171.

19. At oral argument, counsel for the city suggested for the first time that the wiretapping of Murret continued *after* his termination. For two reasons we find that the city is precluded from advancing this position. First, it is well established that a new ground in opposition to a summary judgment will not be considered on appeal. *Zim Israel Navigation Co. v. Special Carriers, Inc.*, 800 F.2d 1392 (5th Cir.1986). Second, the officers' pleadings state that the wiretapping ended in September 1985, the same month that Murret was discharged.