Neville G. ANDERSON, Plaintiff,

v.

McALLISTER TOWING AND TRANS-
PORTATION COMPANY, INC., and
Arabian Gulf Marine, Ltd., Defen-
dants.

No. Civ.A. 97–0011–RV–S.

United States District Court,
S.D. Alabama,
Southern Division.

March 17, 2000.

Ross Diamond, III, Mobile, AL, for
plaintiff.

Thomas S. Rue, Joseph M. Allen, Jr.,
John R. Parker, Mobile, AL, for defen-
dants.

## ORDER

VOLLMER, District Judge.

This matter comes before the court on
plaintiff Neville G. Anderson's motion for
pre-judgment interest at the 6.0% rate of
interest mandated by Alabama law. De-

fendants McAllister Towing & Transportation Company, Inc. (McAllister) and Arabian Gulf Marine, Ltd. (AGM) urge the court to instead apply federal maritime law, which provides the discretion to deny any pre-judgment interest. After carefully reviewing the law and considering the submissions of the parties,[1] the court concludes that the motion will be granted in part and that Anderson will be awarded pre-judgment interest under federal maritime law at the rate of 5.337%.

## I. BACKGROUND

On January 6, 1997, Anderson, a former employee of McAllister and AGM, brought this action to recover severance pay, wages and fringe benefits stemming from the termination of his employment as the captain of the vessel Offshore Sovereign. Although Anderson abandoned a number of his claims, the core of his case proceeded to bench trial on December 17, 1997.

On August 21, 1998, the court issued a memorandum opinion and final order setting forth its findings concerning Anderson's claims. 17 F.Supp.2d 1280. In that opinion and order, the court held that it would "apply the maritime statutes of the United States of America to plaintiff's statutory claim for wages, and Alabama law to questions regarding the construction, interpretation and validity of plaintiff's employment contract with McAllister and AGM." Id. at 1286. Though the court held that Anderson could not recover on his maritime law wage claims under 46 U.S.C. § 10313 and 46 U.S.C. § 10504, the court concluded that Anderson was enti-

tled to $62,513.16[2] pursuant to the terms of his employment contract. Id. at 1287–1290.

That same day, the court entered final judgment in favor of Anderson and against McAllister and AGM, jointly and severally. The judgment awarded Anderson post-judgment interest, but makes no mention of pre-judgment interest.

On December 20, 1999, the Eleventh Circuit vacated the final judgment and remanded the case "for a determination regarding whether Anderson is entitled to recover pre-judgment interest on the [$62,513.16] owed to him and awarded by the district court, and if so, in what amount."[3] Accordingly, on December 22, 1999, this court issued an order that encouraged the parties to resolve this issue themselves and that established a briefing schedule in the event that the parties were unable to come to agreement. Apparently unable or unwilling to reach a consensus, the parties filed briefs on the issue of pre-judgment interest shortly thereafter.

## II. DISCUSSION

At the outset, the court must determine whether Alabama law or federal admiralty law applies to the issue of pre-judgment interest. In his reply brief, Anderson correctly observes that this court previously held that Alabama law applied to questions regarding the construction and interpretation of Anderson's employment contract with McAllister and AGM. 17 F.Supp.2d at 1286. Anderson then goes on to argue that, because he recovered liquidated damages pursuant to this contract governed by

1. The court has considered Anderson's "Motion for Award of Pre–Judgment Interest" (Doc. 56) and supporting brief (Doc. 57); the "Reply of McAllister Towing & Transportation Company, Inc., and Arabian Gulf Marine, Ltd. to Plaintiff's Motion for Award of Pre–Judgment Interest" (Doc. 58); and "Plaintiff's Reply to the Defendants' Brief on Pre–Judgment Interest" (Doc. 59).

2. Specifically, the court held that Anderson was entitled to $50,625.00 in severance pay and $11,888.16, which was the monetary value of three round-trip airline tickets from Mobile, Alabama, to Bangkok, Thailand.

3. The court of appeals affirmed the final judgment in all other respects.

Alabama law, this court must impose pre-judgment interest at a rate of 6.0% per annum, as mandated by sections 8–8–1 and 8–8–8 of the Alabama Code (1975).

■ McAllister and AGM agree, as they must, that the contract was governed by Alabama law, but they emphasize that Anderson's was a contract for maritime employment. Accordingly, they argue that the determination of whether to award pre-judgment interest should be made under federal admiralty law rather than state law. Although McAllister and AGM essentially gloss over this issue, the court nonetheless agrees with their position.

It is well-established that federal admiralty jurisdiction extends to a seaman's contract of employment, and the court concludes that it has such jurisdiction over the employment contract at issue in this case. Although Anderson insists that the court is bound by its prior ruling that Alabama law applies to the contract, that ruling involved only the choice of law for interpreting the contract; it was not a determination of jurisdiction. Indeed, while the memorandum opinion and final order recognized that 28 U.S.C. § 1332 was a proper basis for exercising jurisdiction over Anderson's contract claims, 17 F.Supp.2d at 1282, the court previously determined in its pretrial order that it had jurisdiction over this entire action pursuant to 28 U.S.C. § 1333. The court therefore has admiralty jurisdiction over Anderson's contract claims. *See Canova v. Travelers Ins. Co.,* 406 F.2d 410, 412 (5th Cir.1969).[4]

■ Once federal admiralty jurisdiction attaches, substantive admiralty law is applied. *See Brockington v. Certified Elec., Inc.,* 903 F.2d 1523, 1529 (11th Cir. 1990). Under the substantive admiralty

law, "[t]he award of pre-judgment interest . . . is committed to the sound discretion of the trial court." *Harrison v. Flota Mercante Grancolombiana,* 577 F.2d 968, 988 (5th Cir.1978). Nevertheless, "the award of prejudgment interest from the date of loss is the rule rather than the exception." *Complaint of M/V Vulcan,* 553 F.2d 489, 490 (5th Cir.1977). Furthermore, "an admiralty court should deny prejudgment interest even more rarely in contract cases than in tort cases." *International Paint Co. v. M/V Mission Viking,* 637 F.2d 382, 385 (5th Cir.1981). Thus, the "[d]iscretion to deny pre-judgment interest is created only when there are 'peculiar circumstances' that would make it inequitable for the losing party to be forced to pay." *Noritake Co. v. M/V Hellenic Champion,* 627 F.2d 724, 728 (5th Cir.1980).

■ In this case, the court rejects the argument by McAllister and AGM that there are peculiar circumstances which would permit the denial of pre-judgment interest. McAllister and AGM first contend that the fact that Anderson recovered less than half of the damages he originally sought justifies the denial of pre-judgment interest. The former Fifth Circuit, however, reached the exact opposite conclusion in *Noritake.* There, the court found no peculiar circumstances to justify the denial of pre-judgment interest, even though the plaintiff was awarded only 11% of its claimed damages. 627 F.2d at 728–30. Accordingly, this court concludes that no such peculiar circumstances apply here.

McAllister and AGM next argue that the twelve month period between the filing of this action and trial and the eight month period between trial and the entry of judgment constitutes a peculiar circumstance warranting the denial of pre-judgment interest. Once again, however, a binding de-

---

**4.** In *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981), the Eleventh Circuit adopted as binding precedent all decision issued by

the former Fifth Circuit prior to October 1, 1981.

cision by the former Fifth Circuit counsels against any such finding. *See Harrison,* 577 F.2d at 988 ("We find nothing in this record, including the five year period between injury and trial and the fourteen month period between trial and judgment, which would lead to the conclusion that the trial court abused its discretion in awarding pre-judgment interest."). Moreover, McAllister and AGM completely fail to explain how they were prejudiced by being able to invest since December 1996 the $62,513.16 due to Anderson rather than by paying that sum when it was due.

■ Finally, McAllister and AGM take the position that any award of pre-judgment interest as to Anderson's damages for severance pay would be improper because severance pay constitutes future damages. Although McAllister and AGM correctly cite *Reichert v. Chemical Carriers, Inc.,* 794 F.2d 1557, 1559 (11th Cir. 1986), for the proposition that pre-judgment interest should not be awarded for future damages, they provide no case law or other support for their argument that severance pay constitutes future damages. Indeed, the Eleventh Circuit has recently rejected the argument that severance pay provided by an at-will employment contract constitutes future salary. *See McMillian v. Federal Deposit Ins. Corp.,* 81 F.3d 1041, 1053–55 (11th Cir.1996) (citing *Office and Prof'l Employees Int'l Union v. Federal Deposit Ins. Corp.,* 27 F.3d 598 (D.C.Cir.1994)). Accordingly, the court holds that Anderson's severance pay does not constitute future damages for which an award of pre-judgment interest would be inappropriate.

■ Thus, having concluded that there are no peculiar circumstances which support the denial of pre-judgment interest,

the court turns to the issue of the proper calculation of that interest. As noted above, Anderson argues that the court should apply Alabama's pre-judgment interest rate of 6.0%. *See* Ala.Code § 8–8–1 (1975). McAllister and AGM do not oppose this rate of interest; they simply argue that Anderson should not be awarded any pre-judgment interest whatsoever. Nonetheless, while McAllister and AGM do not directly oppose Anderson's proposed rate of pre-judgment interest, the court does not believe that 6.0% is the appropriate rate at which to calculate the award of pre-judgment interest in this case.

The former Fifth Circuit has emphasized that "[a]dmiralty courts enjoy broad discretion in setting prejudgment interest rates." *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.,* 651 F.2d 1096, 1101 (5th Cir. Unit A July 1981). Accordingly, courts sitting in admiralty may apply the prevailing party's actual cost of borrowing money, *see In re M/V Vulcan,* 553 F.2d 489 (5th Cir.1977), the interest rate established by state law, *see Geotechnical Corp. v. Pure Oil Co.,* 214 F.2d 476 (5th Cir.1954), or any other reasonable guidepost that provides a fair means of establishing the appropriate compensation, *see Gator Marine,* 651 F.2d at 1101.

In determining the appropriate rate of interest in this case, the court is mindful that pre-judgment interest is awarded solely as compensation for the harm done. *See Sinclair Refining Co. v. SS Green Island,* 426 F.2d 260, 262 (5th Cir.1970). As previously noted, Anderson's employment contract was terminated on December 31, 1996. Since that date, the federal pre-judgment interest standard has been as low as 4.242% but has rarely met or exceeded 6.0%.[5] Thus, the court believes that it would be improper to penalize

---

**5.** Indeed, in the forty-three times that the federal Treasury Bill rate has been calculated since December 5, 1996, there were only four instances in which the met or exceeded 6.0%:

March 26, 1997 (6.0%); April 24, 1997 (6.06%); February 1, 2000 (6.287%); and February 29, 2000 (6.197%).

McAllister and AGM by adopting the higher-than-usual 6.0% interest rate applied by Alabama law and advocated by Anderson. For the same reason, the court does not believe it would be fair to retroactively apply the current Treasury Bill rate, 6.197%, to the period for which Anderson is entitled to pre-judgment interest.

Instead, the court believes that the average of the prevailing Treasury Bill rates over the applicable period more accurately reflects the amount of interest that Anderson could have earned on the sums due to him pursuant to his employment contract with McAllister and AGM. *See Ingersoll Milling Machine Co. v. M/V Bodena*, 829 F.2d 293, 310 (2d Cir.1987) (upholding award of pre-judgment interest based on average of prevailing Treasury Bill rates). Accordingly, the court will award Anderson pre-judgment interest at the compounded rate of 5.337%,[6] which will accrue from December 31, 1996, until the date of the entry of the amended final judgment.

## III. CONCLUSION

For the foregoing reasons, the court **GRANTS** Anderson's motion to the extent that it seeks an award of pre-judgment interest on the $62,513.16 previously awarded to him by this court. To summarize, the court concludes: (1) that federal admiralty law controls the issue of pre-judgment interest; (2) that no "peculiar circumstances" exist that would preclude the court from exercising its discretion to award pre-judgment interest; (3) that the rate of pre-judgment interest to be applied is 5.337%; and (4) that this interest shall accrue at a compounded rate from December 31, 1996, until the date of the entry of the amended final judgment.

An amended final judgment will be entered by separate document pursuant to

Rule 58 of the Federal Rules of Civil Procedure.

---

6. The court calculated this percentage by averaging the forty-three consecutive Treasury Bill rates beginning with the 5.45% rate of December 5, 1996, and ending with the 6.197% rate of February 29, 2000.